UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEXTPULSE, LLC, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>BRUNSWICK CORPORATION,<br><br>    Defendant. | Case No. 22-cv-04071-HSG<br><br>**ORGER GRANTING MOTION TO REMAND, DENYING REQUEST FOR ATTORNEYS' FEES AND COSTS, AND GRANTING IN PART AND DENYING IN PART MOTION TO SEAL**<br><br>Re: Dkt. Nos. 20, 32 |

Before the Court is Plaintiff's motion to remand and request for attorneys' fees and costs, Dkt. No. 20 ("Motion"). The Motion is fully briefed. *See* Dkt. Nos. 20, 27, and 43.[1] Cross-defendant eGym, Inc. took no position on the Motion. Dkt. No. 26. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons discussed below, the Court **GRANTS** Plaintiff's motion to remand, **DENIES** Plaintiffs' request for attorneys' fees and cost, and **GRANTS IN PART AND DENIES IN PART** Defendant's motion to seal.[2]

---

[1] Brunswick filed an objection to Nextpulse's reply. Dkt. No. 44. Brunswick asks the Court to either strike the allegedly new evidence and arguments or alternatively permit Brunswick a five-page sur-reply. *Id.* at 2-3. The Court **DENIES AS MOOT** Brunswick's requests because it did not consider the allegedly new evidence or arguments in deciding the motion.

[2] Nextpulse requests that the Court take judicial notice of several filings in the state court case and Brunswick's notice of removal. *See* Dkt. No. 22 ("Nextpulse RJN"). The Court takes judicial notice of the filings from the state court case because the state court case has a "direct relation to matters at issue." *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.* (*Borneo*), 971 F.2d 244, 248 (9th Cir. 1992) (quotation omitted). To the extent the documents contain factual findings made by a state court or allegations by one of the parties, the Court declines to take notice of those facts for the truth of the matters they assert. *See Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1117 n.14 (9th Cir. 2005) (declining to take judicial notice of findings made in a state court proceeding "because [defendants were] offering the factual findings contained in the order for the purpose of proving the truth of the factual findings contained therein[ ]"); *Wyatt v. Terhune*, 315 F.3d 1108, 1114 n.5 (9th Cir. 2003) ("Factual findings in one case ordinarily are not admissible for their truth in another case through judicial notice.") *overruled on other grounds by*

## I. MOTION TO REMAND

### A. Factual Background

Nextpulse, LLC ("Nextpulse") is a successor-in-interest of Netpulse, Inc, a company that developed "software applications, content delivery systems, and network-based services related to exercise equipment." Dkt. No. 1-2 ("SAC") ¶¶ 2, 13. Nextpulse alleges that Brunswick Corporation's (Brunswick) "Life Fitness division designed, manufactured, and marketed fitness equipment products." *Id.* ¶ 12.[3] According to Nextpulse, this "action arises out of a series of contracts" between Netpulse and Brunswick. Mot. at 2.

Nextpulse filed its initial complaint against Brunswick in San Francisco Superior Court on November 2, 2018. *See* Nextpulse RJN, Ex. 2. Nextpulse filed its Second Amended Complaint ("SAC")—the operative complaint at the time of removal—on April 12, 2021. *See* SAC. The SAC alleges the following eleven causes of action against Brunswick: 1) Breach of Contract; 2) Breach of Implied Covenant of Good Faith and Fair Dealing; 3) Fraud: Intentional Misrepresentation, Concealment of Facts, False Promise; 4) Breach of Contract: Virtual Active Licensing Agreement; 5) Breach of Contract (Advertising Services Agreement); 6) Breach of Contract (Mobile Application and Design and Development Agreement); 7) Breach of Contract (Confidentiality); 8) Breach of the Implied Covenant of Good Faith and Fair Dealing; 9) Quantum Meruit; 10) Quantum Valebant; and 11) Trade Secret Misappropriation under the Federal Defend Trade Secrets Act.[4] *See generally* SAC. Even though the eleventh cause of action is a federal cause of action, Brunswick did not remove the case when the SAC was filed.

---

*Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014). The Court notes that it does not need to take judicial notice of the notice of removal as it is part of the record in this case.

Brunswick requests that the Court take judicial notice of several filings in the Northern District of Illinois case. *See* Dkt. No. 30. The Court take judicial notice of the filings from the Illinois case because the Illinois case has a "direct relation to matters at issue." *Borneo*, 971 F.2d at 248. As with the state court documents in Nextpulse's RJN, to the extent the documents in Brunswick's RJN contain factual findings made by the Northern District of Illinois or allegations by one of the parties, the Court declines to take notice of those facts for the truth of the matters they assert.
[3] Nextpulse alleges that Life Fitness was a division of Brunswick but that it has been an independent company since November 19, 2018. SAC at ¶ 5.
[4] The San Francisco Superior Court sustained without leave to amend Brunswick's demurrer to the quantum meruit (ninth) and quantum valebant (tenth) causes of action. RJN, Ex. 7 at 2.

2

In June 2022, Nextpulse sued LifeFitness in the Northern District of Illinois. *See generally* Dkt. No. 1 ("Notice of Removal"), Ex. 5 ("Illinois Complaint"). The Illinois Complaint alleges that Brunswick breached several contracts with Netpulse, *see e.g.,* Illinois Complaint ¶ 26, and that it improperly transferred to Life Fitness (after its sale) Netpulse technology, confidential information, and "various forms of intellectual property." *Id.* ¶ 32. Nextpulse also alleges that Life Fitness unlawfully reproduced, distributed, publicly displayed, and/or created derivative works from Netpulse's copyrighted computer software and videos. *See id.* ¶¶ 36-43. The Illinois Complaint alleges the following claims: 1) Copyright Infringement, 2) Tortious Interference with Contractual Rights, and 3) Trade Secret Misappropriation Under the Federal Defend Trade Secrets Act. *See generally id.*

Brunswick removed the San Francisco Superior Court case to this Court on July 12, 2022 "pursuant to 28 U.S.C. §§ 1338, 1446, and 1454." Notice of Removal at 1. Brunswick argued that Nextpulse's "allegations about Brunswick's breach of its confidentiality obligations under the Virtual Active License Agreement ['VALA'] arise under the Copyright Act" and federal patent law. *Id.* ¶¶ 18-20. The relevant cause of action reads as follows:

> **Seventh Cause of Action**
> **Breach of Contract (Confidentiality)**
> **(Against All Defendants)**
>
> 163. Plaintiff re-alleges and incorporates by reference every allegation contained in the preceding paragraphs of this Complaint as though set forth herein.
>
> 164. Plaintiff and Brunswick entered into the Virtual Active License Agreement on or about July 30, 2015.
>
> 165. The Virtual Active License agreement contained a "Restrictions" clause wherein the parties "agree[ d] to use the other party's Confidential Information only as authorized in this Agreement and not for any other personal or commercial advantage separate from the transactions contemplated from this Agreements" and agreed "Neither party will disclose the Confidential Information to any person except its employees or consultants to whom it is necessary to disclose the Confidential Information in order for such party to carry out its obligations under this Agreement."
>
> 166. Confidential Information was defined in the Virtual Active License Agreement as:
>
> "Confidential Information" includes:

3

> (a) The Licensed Software;
> (b) Both parties' research and development, pricing and new product and marketing plans, unless and until publicly disclosed;
> (c) Nonpublic financial and administrative information concerning either party;
> (d) The terms and conditions of this Agreement; and
> (e) Any other information, in any form, tangible or intangible, which is disclosed in writing, orally or by observation, which is either nonpublic, proprietary, a trade secret or confidential in nature, as evident from the circumstances under which disclosed, and, with respect to information that is disclosed orally or by observation, which is designated by either party in writing as confidential or proprietary within thirty (30) days of such disclosure.
>
> 167. Plaintiff alleges on information and belief that Defendants breached the Virtual Active License Agreement by using Netpulse's Confidential Information, including but not limited to its software, code, marketing, sales, and pricing information relating to the Netpulse advertising platforms, for its own personal and commercial advantage separate and apart from the transactions contemplated in the Virtual Active License Agreement.
>
> 168. Defendants also breached the Virtual Active License Agreement by selling and disclosing Netpulse's Confidential Information to Life Fitness, LLC.
>
> 169. As a direct and proximate result of the breach of the Virtual Active License Agreement, Plaintiff has suffered damages, the exact amount of which has not been ascertained, but will be according to proof.

SAC ¶¶ 163-169 (emphasis removed).

Nextpulse moves to remand, arguing, among other things, that 1) Brunswick's removal was not timely because the SAC included a federal cause of action but Brunswick did not remove the case at that time, 2) the Illinois Complaint is not an "other paper" that can trigger a right to removal, and 3) the SAC's breach of contract claims are not preempted by the Copyright or Patent acts. *See generally* Mot.

**B.     Legal Standard**

Section 1338 provides that "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents . . . copyrights and trademarks" and that "[n]o State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents . . . or copyrights." 28 U.S.C. § 1338(a). With the exception of

4

certain limited scenarios, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Section 1446 "provides two thirty-day windows during which a case may be removed—during the first thirty days after the defendant receives the initial pleading or during the first thirty days after the defendant receives a paper 'from which it may first be ascertained that the case is one which is or has become removable' if 'the case stated by the initial pleading is not removable.'" *Harris v. Bankers Life and Casualty Co.,* 425 F.3d 689, 692 (9th Cir. 2005) (quoting 28 U.S.C. § 1146(b)).

Section 1454 provides a different removal timeline for any "civil action in which any party asserts a claim for relief arising under any Act of Congress relating to patents . . . or copyrights." 28 U.S.C. § 1454. The statute provides that "if the removal is based solely on this section . . . the time limitations contained in section 1446(b) may be extended at any time for cause shown." 28 U.S.C. § 1454.

When a case is removed, the burden of establishing the propriety of removal falls on the defendant, and the removal statute is strictly construed against removal jurisdiction. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.*

**C.     Discussion**

As a preliminary matter, neither party seems to contest that the case became removable in April 2021 once Nextpulse filed its SAC, which added a cause of action for trade secret misappropriation under the Federal Defend Trade Secrets Act. *See* Mot. at 5, Dkt. No. 27 ("Oppo.") at 16; *see generally* SAC. By waiting until July 12, 2022 to file its notice of removal, Brunswick undeniably failed to remove the case within the 30-day timeline provided by Section 1446(b). *See* Notice of Removal.

Despite this, Brunswick argues that its removal was still timely because the SAC's seventh cause of action falls under Section 1454, which allows a defendant to remove a case to federal court at any time, as long the defendant shows cause for the delay. *See* Oppo. at 16-17; *see also*

5

28 U.S.C. § 1454. The Court disagrees: Section 1454 requires that a claim "aris[e] under [an] Act of Congress relating to patents . . . or copyrights," and the seventh cause of action does not.

An action "arises under" the Copyright Act "if: (1) the complaint asks for a remedy expressly granted by the Copyright Act; (2) the complaint requires an interpretation of the Copyright Act; or (3) federal principles should control the claims." *Scholastic Ent., Inc. v. Fox Ent. Grp., Inc.*, 336 F.3d 982, 986 (9th Cir. 2003). Brunswick argues that the seventh cause of action will require a state court to decide several issues that implicate the Copyright Act, including determining the evidentiary weight to be given to Nextpulse's new certificates of registration, deciding who was the author of the "work," deciding whether Nextpulse's "work for hire" claim is specious, and unravelling the chain of title. *See* Oppo. at 12-13.

As a preliminary matter, to the extent Brunswick is attempting to rely on anticipated counterclaims that could support removal under Section 1454, that argument fails. *See Busch v. Jakov Dulcich & Sons LLC*, No. 15-CV-00384-LHK, 2015 WL 3792898, at *6 (N.D. Cal. June 17, 2015) (stating that "[t]he few courts that have addressed similar arguments have concluded that § 1454 requires a party to actually assert a claim for relief, not merely raise the specter of a future claim" (quotations removed)). And to the extent Brunswick bases its removal claim on the seventh cause of action as pled by Plaintiff in the SAC, nothing in that claim raises any of these issues or any other question that would require the interpretation of the Copyright Act.

The reasoning the Ninth Circuit has used to analyze whether certain breach of contract causes of action are preempted by the Copyright Act is instructive here. The Ninth Circuit has recognized that "because contractual rights are not equivalent to the exclusive rights of copyright, the Copyright Act's preemption clause usually does not affect private contracts." *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 957 (9th Cir. 2010) (citing *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir. 2005) and *ProCD, Inc. v. Zeidenberg,* 86 F.3d 1447, 1454 (7th Cir.1996)). The Ninth Circuit cited the Seventh Circuit's reasoning that "[a] copyright is a right against the world. Contracts, by contrast, generally affect only their parties; strangers may do as they please, so contracts do not create 'exclusive rights.'" *MDY Indus.,* 629 F.3d at 957 (quoting *ProCD,* 86 F.3d at 1454). Here, the seventh cause of action affects only the parties and does not

6

1    implicate Netpulse's entitlement to "restrict the options of [strangers]" with respect to any part of

2    the Confidential Information. *See Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 761 (9th Cir.

3    2015) (quoting *ProCD,* 86 F.3d at 1454). The contract provision at issue also does not create or

4    purport to vindicate "a right against the world." *See id.* (quoting *ProCD, Inc.*, 86 F.3d at 1454).

5         Determining whether Brunswick breached the contract provision referenced in the seventh

6    cause of action also does not require determining whether Netpulse/Nextpulse has or had a

7    copyright as to the information at issue, because that confidential information was protected by the

8    VALA agreement whether or not it was copyrighted. The seventh cause of action alleges that

9    Defendants breached the VALA agreement by using, selling, and disclosing "Confidential

10   Information, including but not limited to its software, code, marketing, sales, and pricing

11   information relating to the Netpulse advertising platforms." SAC ¶¶ 167-68. Some of the

12   enumerated categories of information, such as "marketing, sales, and pricing information," plainly

13   need not fall within the scope of any copyright. Further, the Ninth Circuit has found that "use is a

14   qualitatively different right" than reproduction, and that "unauthorized use of the software's end-

15   product is not within the rights protected by the federal Copyright Act." *Altera Corp.*, 424 F.3d at

16   1090.

17        For the same reasons, the Court finds that the seventh cause of action does not "ask[] for a

18   remedy expressly granted by the Copyright Act," *Scholastic*, 336 F.3d at 986, and that there is no

19   indication that "federal principles should control the claims," *id.*[5]

20        Brunswick further argues that it "did not learn that Count Seven was removable under

21   §1454 until Nextpulse filed its Illinois complaint on June 21, 2022" because "[o]nly after

22   Nextpulse pleaded that Brunswick acted in concert with Life Fitness to infringe copyrights and

23   misappropriate 'other intellectual property' in the Illinois complaint was Brunswick able to

24   decipher that Count Seven arises under copyright and patent law." Oppo. at 15-16. Brunswick

25   states that it learned that Nextpulse "registered copyrights in the technology at issue in the

26   California complaint" days before it filed the Illinois complaint. *Id.* at 16. But the allegations

---

[5] It further follows for these reasons that the seventh cause of action necessarily is not *preempted* by the Copyright Act either.

7

made in the Illinois case are irrelevant to whether this Court has jurisdiction over the California case. *See Amkor Tech., Inc. v. Tessera, Inc.*, No. 5:14-CV-03604 EJD, 2014 WL 4467715, at *4 (N.D. Cal. Sept. 9, 2014) (reasoning that "whether or not the Delaware infringement action is some type of implicit jurisdictional recognition on Tessera's part is irrelevant to this analysis, which is confined to an examination of whether federal jurisdiction exists over *this* case" (emphasis in original)).

The Court must strictly construe Section 1454 against removal jurisdiction. *See Gaus*, 980 F.2d at 566. The Court finds that Section 1454 does not cover the seventh cause of action because that claim does not arise under "any Act of Congress relating to patents . . . or copyrights."[6] *See* 28 U.S.C. § 1454. Accordingly, Brunswick is not entitled to Section 1454's extension of the default removal timeline laid out in section 1446(b). As Brunswick's removal was not timely, the Court **GRANTS** Plaintiff's motion and **REMANDS** this case back to San Francisco County Superior Court. *See Gaus*, 980 F.2d at 566 (stating that "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance").

## II.     REQUEST FOR ATTORNEYS' FEES AND COSTS

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447. "[T]he standard for awarding fees should turn on the reasonableness of the removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005); *see also Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin*, 546 U.S. at 141.

Although the Court ultimately disagreed with Defendant's reasoning that removal was timely in this case, the Court does not find that Defendant's arguments were objectively unreasonable,

---

[6] The Court finds that the seventh cause of action is even less connected to the Patent Act than to the Copyright Act, with the consequence that the seventh cause of action does not "arise under" and is not preempted by the Patent Act.

8

given the lack of any clearly controlling authority regarding Section 1454 removals under similar circumstances. *See Martin*, 546 U.S. at 141; *Lussier*, 518 F.3d at 1065 ("[R]emoval is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted"). Thus, the Court declines to award attorneys' fees under these circumstances and **DENIES** Nextpulse's request for attorneys' fees and costs.

### III. MOTION TO SEAL

Courts generally apply a "compelling reasons" standard when considering motions to seal documents. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (quoting *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)). "This standard derives from the common law right 'to inspect and copy public records and documents, including judicial records and documents.'" *Id.* (quoting *Kamakana*, 447 F.3d at 1178). "[A] strong presumption in favor of access is the starting point." *Kamakana*, 447 F.3d at 1178 (quotations omitted). To overcome this strong presumption, the party seeking to seal a judicial record attached to a dispositive motion must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process" and "significant public events." *Id.* at 1178–79 (quotations omitted). "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* at 1179 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.*

Brunswick's sealing request seeks to seal 1) approximately eight lines of text from its opposition to the motion to remand, and 2) the March 2018 Asset Purchase Agreement ("APA")— Exhibit 2 to the Peden declaration and Exhibit 1 to the Motion to Seal. *See* Dkt. No. 32. eGym separately requests that the APA also be maintained under seal. Dkt. No. 41 at 1. According to

eGym, it "seeks to seal only the APA itself, but does not seek to seal the material quoted or paraphrased from the APA in Brunswick's opposition brief." *Id.* Nextpulse joined eGym's request and submitted a statement requesting that the entire APA be filed under seal but agreeing that "the brief . . . need not be designated as confidential and the redacted portions may be included in the public record." Dkt. No. 42 at 1-2. The Court must decide two issues: 1) whether the redactions in Brunswick's opposition should remain under seal, and 2) whether the APA itself should be kept under seal.

### A. Redactions in Opposition Brief

The Court **DENIES** Brunswick's request to seal the approximately eight lines of redacted text in its opposition. In its motion to seal, Brunswick fails to support its request to redact its opposition with "compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure." *Kamakana*, 447 F.3d at 1178–79 (quotations omitted). The Court **DIRECTS** Brunswick to file an unredacted, public version of its opposition brief within seven days from the date of this order.

### B. APA Exhibit

As to the APA, eGym argues that the Court should seal the full APA exhibit because eGym "does not seek to seal the quotations or paraphrases that appear in Brunswick's brief, which means that the public will be able to fully understand the material presented to the Court as a basis for its decision and fully understand the judicial decision-making process." Dkt. No. 41 at 2. The Court agrees with eGym that the "uncited portions of the APA that Brunswick does not rely upon are irrelevant, shed no light on judicial process, and there is thus little or no countervailing public interest in disclosure." *Id.* at 2. Further, eGym has established that disclosure of the full APA would reveal information related to "eGym's acquisition, market development, and revenue generation strategies . . . which if publicly disclosed would damage eGym's competitive standing and give eGym's competitors an unfair advantage" and that "disclosure of the APA would be harmful to eGym's competitive interests and could result in a potential loss of revenue, competitors copying eGym's well-researched strategies, and result in a disadvantage to eGym with respect to targeted acquisitions, market development, and revenue generation." Dkt. No. 41-2 ¶ 4.

10

The Court finds compelling reasons to seal this confidential, strategic, and competitively sensitive business information. *See Snapkeys, Ltd. v. Google LLC*, No. 19-CV-02658-LHK, 2021 WL 1951250, at *2-3 (N.D. Cal. May 14, 2021) (granting motion to file under seal confidential information regarding technology because competitive harm would result from disclosure of such information); *Baird v. BlackRock Institutional Trust Co., N.A.*, 403 F. Supp. 3d 765, 792 (N.D. Cal. 2019) (granting motion to seal sensitive and proprietary information); *Synchronoss Techs., Inc. v. Dropbox Inc.*, No. 16-CV-00119, 2017 WL 11527607, at *2 (N.D. Cal. Dec. 27, 2017) (granting motions to seal highly confidential and proprietary information that was not publicly available and could result in unfair competitive advantage to competitors); *FTC v. Qualcomm Inc.*, No. 17-CV-220-LHK, 2019 WL 95922, at *3 (N.D. Cal. Jan. 3, 2019) (granting motion to seal under the compelling reasons standard to the extent it may harm the party or third parties' "competitive standing and divulges terms of confidential contracts, contract negotiations, or trade secrets."). The Court **GRANTS** the parties' request to maintain the APA under seal.

## IV.  CONCLUSION

The Court **GRANTS** Plaintiff's motion to remand, Dkt. No. 20, and **REMANDS** the case to San Francisco Superior Court. The Clerk is **DIRECTED** to close the case.

The Court **DENIES** Nextpulse's request for attorneys' fees.

The Court **GRANTS IN PART** and **DENIES IN PART** Brunswick's motion to seal, Dkt. No. 32. The Court **DIRECTS** Brunswick to file an unredacted, public version of its opposition brief within seven days from the date of this order.

This order **TERMINATES AS MOOT** eGym's motion to dismiss (Dkt. No. 57); Brunswick's motion to compel (Dkt. No. 80); and the following joint discovery letter briefs: Dkt. Nos. 48, 76, and 78.

**IT IS SO ORDERED.**

Dated:   2/10/2023

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge